727 F.2d 473
 34 Fair Empl.Prac.Cas. 505,
34 Empl. Prac. Dec. P 34,291
Harris A. PARSON and Arcell Williams, Plaintiffs,
Harris A. Parson, Plaintiff-Appellee Cross-Appellant,
v.
KAISER ALUMINUM & CHEMICAL CORP., et al., Defendants,
Kaiser Aluminum & Chemical Corp., Defendant-Appellant Cross-Appellee.
 No. 83-3312.
 United States Court of Appeals,
Fifth Circuit.
 March 19, 1984.
 
 Carl J. Schumacher, Jr., New Orleans, La., for defendant-appellant cross-appellee.
 Richard B. Sobol, Washington, D.C., Nils R. Douglas, New Orleans, La., for plaintiff-appellee cross-appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, RANDALL and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 Kaiser Aluminum & Chemical Corporation (Kaiser) appeals judgment rendered against it on the individual claim that Kaiser denied the appellee Harris Parson promotion to a foreman's position in violation of rights secured to him under Title VII of the Civil Rights Act of 1964, as amended, and by 42 U.S.C. Sec. 1981. We affirm.
 
 I.
 
 2
 This appeal arises from a suit originally filed in September 1967. Its lengthy procedural history has been set out in several prior published opinions. The first time this case went to trial, the district court dismissed the plaintiffs' claims, after the presentation of their case, under Fed.R.Civ.P. 41(b). This court reversed and remanded, holding that the plaintiffs had established a prima facie case of racial discrimination with respect to individual and class claims. Parson v. Kaiser Aluminum & Chemical Corp., 575 F.2d 1374, reh. denied, 583 F.2d 132 (5th Cir.1978), cert. denied, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). On remand, the liability phase of the litigation was completed, and judgment was rendered against Kaiser on several claims by the district judge who referred the case to a special master for recommendations as to remedy. Parson v. Kaiser Aluminum & Chemical Corp., 497 F.Supp. 339 (E.D.La.1980). Dealing with Parson's individual claim first, the special master recommended judgment in Parson's favor in the amount of $71,669, plus interest. The district court adopted the master's findings and entered final judgment in that amount for Parson, certifying the case for immediate appeal under Fed.R.Civ.P. 54(b). We are now concerned only with the final judgment on Parson's individual claim.
 
 II.
 
 3
 The district court articulated a number of fact findings relevant to Parson's individual claim in its 1980 opinion. Kaiser does not challenge the validity of any of them. This appeal is based on Kaiser's contention that the district court applied an incorrect legal standard in holding it liable to Parson for intentional racial discrimination. Kaiser also challenges the amount of the back pay award.
 
 III.
 A.
 
 4
 Since the district court entered its findings on liability in this case, the Supreme Court has clarified the role of the fact finder in Title VII[1] cases with two opinions: Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and United States Postal Service Board of Governors v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). It is clear that the Supreme Court's intervening opinions changed the law, at least in this circuit, with respect to the evidentiary burdens borne by the parties after a prima facie case has been established in a Title VII suit.[2] Before Burdine was decided, courts in this circuit had held that if the plaintiff made out a prima facie case of racial discrimination, the defendant, in order to prevail, had to present evidence capable of persuading the trier of fact that the challenged employment decision was made for a non-discriminatory reason. See Turner v. Texas Instruments, Inc., 555 F.2d 1251 (5th Cir.1977); Parson, supra, 575 F.2d at 1374; Burdine v. Texas Department of Community Affairs, 608 F.2d 563 (5th Cir.1979). In reversing the latter decision, the Supreme Court made it clear that the defendant's burden is simply to articulate a non-discriminatory reason for the challenged action. Judgment automatically is rendered for the plaintiff only if the defendant is "silent in the face of the presumption" created by the prima facie case. 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Once the plaintiff has established a prima facie case and the defendant has articulated a non-discriminatory reason for its action, the trier of fact must decide whether the defendant intentionally discriminated against the plaintiff. The ultimate burden of persuasion on this issue remains at all times with the plaintiff. 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.
 
 
 5
 The Supreme Court further explained the role of the fact finder in a Title VII case in Aikens, a case which had been fully tried on the merits. On appeal, the Postal Service claimed that the plaintiff had never made out a prima facie case. The Supreme Court held that, once the defendant had articulated non-discriminatory reasons for failing to promote the plaintiff, whether the plaintiff had established a prima facie case became irrelevant, because the district court had before it all the evidence necessary to decide the ultimate issue of intentional discrimination. --- U.S. at ----, 103 S.Ct. at 1482, 75 L.Ed.2d at 410. "At this stage, the McDonnell-Burdine presumption 'drops from the case,' ... and 'the factual inquiry proceeds to a new level of specificity.' " Id. (Citation omitted.) Once the parties have presented evidence on the intent issue sufficient to meet their intermediate evidentiary burdens, the district court "must decide which party's explanation of the employer's motivation it believes." Id. The Supreme Court admonished trial courts and reviewing courts against making this inquiry "even more difficult by applying legal rules which were devised to govern 'the allocation of burdens and order of presentation of proof,' ... in deciding this ultimate question." Id. (citation omitted).
 
 
 6
 Since Aikens was decided, we have noted that in fully tried cases in which intentional discrimination is at issue, the appellate court is not to concern itself with "the adequacy of a party's showing at any particular stage of the McDonnell Douglas ritual ...." Elliott v. Group Medical & Surgical Service, 714 F.2d 556, 546 (5th Cir.1983). Rather, appellate review centers on the fact finder's ultimate conclusion as to the employer's motivation. Williams v. Southwestern Bell Telephone Co., 718 F.2d 715, 717-18 (5th Cir.1983).
 
 B.
 
 7
 It is Kaiser's contention that the district court in this case applied this circuit's pre-Burdine standard, requiring the company to prove the absence of racial motivation in its decision not to promote Parson. Kaiser argues that the district judge entered judgment against it because it failed to rebut, by a preponderance of the evidence, Parson's prima facie case. Kaiser rests its arguments primarily on the district court's findings numbered twelve through fifteen, in which the court considered "the business requirements of Kaiser to determine if they have a manifest relation to Parson's failure to achieve promotion. Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977)." 497 F.Supp. 342.
 
 
 8
 Considering the opinion of the district court as a whole, we disagree with Kaiser that the district court rendered judgment for Parson solely because of its application of the McDonnell Douglas burdens of proof. First, the district court considered the evidence establishing Parson's prima facie case and the reasons articulated by Kaiser for failing to promote Parson. The district court set forth in its findings of fact exactly what it found to be Kaiser's motive for not promoting Parson: "Parson had ... sought to involve himself in a leadership role among the black employees at the Kaiser plant in connection with various management-based attempts to eliminate racially segregated facilities ...." 497 F.Supp. at 341. The district court explicitly stated that but for these activities "Parson would have been considered for and, more likely than not, subsequently promoted to the rank of foreman ...." Id. at 342. The district judge made an explicit finding in this first phase of the opinion that Kaiser's "reluctance in promoting Parson" was based on factors including "the company's not necessarily misplaced fear that Parson's promotion would trigger a violent and prolonged (and, thus, expensive) reaction on the part of certain white, racially-motivated employees...." Id. at 342 n. 2. This conclusion is supported by the record and especially by the testimony of Richard Humphrey, a Kaiser supervisor. Humphrey had the primary responsibility for bringing the metal products department, where Parson worked, into compliance with the Civil Rights Act of 1964. Humphrey testified that:
 
 
 9
 Aside from the desegregation of all plant facilities, we were engaged in an effort to locate and promote a black to the first line supervisory position, but we were extremely conscious of the fact that that black had to succeed--had to be successful with all the turmoil we had gone through. We were very concerned that should a first black or blacks--the first few that took salaried employee positions--be less than extremely well qualified and supported that we would have lost a lot of ground in our effort to establish credibility in having black supervisors. It was a long time to find and to get blacks to accept positions of that much risk and responsibility because there was significant risk.
 
 
 10
 The language of finding number ten clearly expresses the district court's finding on the ultimate issue of intent. We see no other way to read it: the district court obviously believed Parson's explanation of Kaiser's motivation in denying his application.
 
 
 11
 Having decided the factual issue of Kaiser's intent, the district judge next addressed a defense raised by Kaiser to liability under Title VII. The district judge's reference to Dothard v. Rawlinson in finding number twelve indicates to us that the findings following number twelve were made to support his legal conclusion that Kaiser was not entitled to invoke the bona fide occupational qualification exception to the Civil Rights Act. See Dothard, 433 U.S. at 333, 97 S.Ct. at 1788-89, 53 L.Ed.2d at 800.
 
 
 12
 The district court acknowledged that the evidence before it demonstrated that Kaiser's management was making good-faith efforts to comply with the Civil Rights Act of 1964, but that these efforts were hampered by fear of racially motivated violence. The district court found that, "there is evidence of instances of de facto discrimination occasioned by timidness and vacillation resulting from fear and concern for the overall plant operations. This de facto (though unintentional) discrimination is understandable and yet unacceptable." 497 F.Supp. at 342-43. This finding is followed, in the very next sentence, by the district court's conclusion that blacks seeking promotion were required to show greater ability than whites. Kaiser argues that this finding, and especially the use of the word "unintentional," is tantamount to a finding of absence of discrimination. We disagree. Kaiser reads the district court's findings out of context. It is clear that, after a full review of the evidence, the district judge found Kaiser to have consciously adopted a higher standard of review for foreman applications made by black employees. It is also clear that the district judge found this discriminatory policy to have been the "but-for" cause of the denial of Parson's application. The district court's findings must be read as a response to Kaiser's contention that it was justified, because of the violent atmosphere at the Chalmette plant, in requiring black applicants to be more highly qualified than white applicants. This response has nothing to do with the factual issue of intent, as Kaiser now asserts on appeal. Rather, it addresses the question whether Kaiser had advanced a defense to liability for its deliberate decision to scrutinize black applicants more carefully than whites. The district court correctly found that Kaiser had not asserted a valid defense under Title VII. See City of Los Angeles Department of Water v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978); Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris, 436 U.S. ----, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983).
 
 
 13
 As we noted previously, Kaiser has not suggested in its appeal that the district court's findings regarding its motivations are clearly erroneous, and we are bound to accept them. Because the district court found, after reviewing the entire evidence, that Kaiser had intentionally discriminated against Parson, and because we agree with its conclusion that such discrimination was illegal under Title VII regardless of the fact that it was not invidious, we must uphold the judgment that Kaiser is liable to Parson for damage caused him by that discrimination.
 
 IV.
 
 14
 Kaiser raised several objections to the manner in which the special master calculated the back pay award and interest due Parson. The district court considered and rejected these arguments. We do the same, noting at the outset that what amount of back pay will fairly compensate a successful Title VII plaintiff is a question of fact. The district court's findings regarding compensation will, therefore, be rejected on appeal only if clearly erroneous. Marks v. Prattco, Inc., 633 F.2d 1122, 1125 (5th Cir.1981); Chescheir v. Liberty Mutual Insurance Co., 713 F.2d 1142, 1150 (5th Cir.1983).
 
 
 15
 The district court awarded Parson the difference between a foreman's salary and the wages he actually earned during the period from September 1967 to June 1982. Kaiser argues that the back pay period should have terminated in April 1972, when a nondiscriminatory selection procedure was instituted, or at the latest in March 1973, when Parson's application for a foreman's position was rejected under the new procedure. Parson argues that he continued to suffer the detriments of discrimination after 1973; if he had been promoted earlier, he would have continued to hold the higher-paying position even after Kaiser began to use a new procedure for handling applications. Both the special master and the district judge considered the argument now raised by Kaiser. They concluded that the 1973 denial of Parson's application did not vindicate Kaiser or absolve it from liability for the effects of its past discrimination. The district court, in accepting the special master's recommendation, implicitly found that the effects of Kaiser's failure to promote Parson in 1967 will continue to be felt until Parson receives the promotion he was unlawfully denied. See Parson, 575 F.2d at 1391. We do not find this conclusion to be clearly erroneous.
 
 
 16
 Kaiser also argues that the award of prejudgment interest on the back-pay award is not explicitly authorized, and therefore not allowed, by 28 U.S.C. Sec. 1961, which provides for the award of postjudgment interest. The great weight of authority indicates otherwise; indeed, Kaiser cites no cases supporting its position. Prejudgment interest as awarded by the district court[3] has been approved by this court in similar cases. See Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 263 (5th Cir.1974); Whiting v. Jackson State University, 616 F.2d 116, 127 n. 8 (5th Cir.1980). The award of prejudgment interest in this case reflects an appropriate exercise of the district court's authority to fashion relief which makes whole the injured party.V.
 
 
 17
 For the reasons stated herein, the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Remedies for employment discrimination under 42 U.S.C. Sec. 1981 are considered only if the plaintiff asserts claims on grounds different from those underlying the Title VII claims. We find no such distinction in the evidence in this case and therefore analyze Parson's claim under Title VII. See Rivera v. City of Wichita Falls, 665 F.2d 531, 534 n. 4 (5th Cir.1982); Carpenter v. Stephen F. Austin State University, 706 F.2d 608, 612 (5th Cir.1983)
 
 
 [2]
 A plaintiff in a Title VII case may establish a prima facie case of racial discrimination by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The elements of a prima facie case may differ depending upon the factual situation from which a Title VII claim arises. Id. at n. 13
 
 
 [3]
 Kaiser also argues that prejudgment interest should have been allowed only on the after-tax value of the award and that the interest should have been simple rather than compound. We find no error on the part of the district court in these respects