LOEFFLER *v.* FRANK, POSTMASTER GENERAL OF
THE UNITED STATES

No. 86–1431.   Argued January 11, 1988—Decided June 13, 1988

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, STEVENS, and SCALIA, JJ., joined. WHITE, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR, J., joined, *post*, p. 566. KENNEDY, J., took no part in the consideration or decision of the case.

*Lisa S. Van Amburg* argued the cause and filed briefs for petitioner.

*Charles A. Rothfeld* argued the cause for respondent. With him on the brief were *Solicitor General Fried, Deputy*

*Solicitor General Ayer, John F. Daly,* and *Stephen E. Alpern.\**

JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the question whether prejudgment interest may be awarded in a suit against the United States Postal Service brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*

I

Petitioner Theodore J. Loeffler was discharged from his position as a rural letter carrier for the United States Postal Service.[1] Petitioner appealed his termination to the Merit Systems Protection Board and, when his discharge was affirmed there, sought administrative relief from the Equal Employment Opportunity Commission. This, also, was without success. Contending that his discharge resulted from

---

*\*Julius LeVonne Chambers, Gail J. Wright,* and *Charles Stephen Ralston* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging reversal.

[1] Petitioner's discharge arose from his practice of casing boxholder mail. "Boxholder" mail is third-class mail that does not bear the name and address of a particular individual but is given to the postal carrier in a single bundle for delivery to each current resident or possessor of a rural-delivery mailbox. The District Court explained: "'Casing' is the practice of inserting the boxholders in each separation of the delivery case in the post office work area prior to delivery, and then inserting the first or second class mail inside the boxholders so that the boxholders form a convenient sleeve for the rest of the pieces of mail and thus make delivery quicker and easier. The alternative to casing the boxholders is to carry them as separate bundles and insert them into each individual post box during delivery." App. to Pet. for Cert. A–28.

In 1979, pursuant to directives from Postal Service headquarters in Washington, D. C., all five rural carriers at the Chesterfield, Mo., Post Office, including petitioner, were instructed not to case the boxholders. The rule against casing was openly violated by petitioner and by two female rural carriers. Although all three carriers repeatedly ignored the rule, only petitioner was discharged, while the two female carriers were disciplined mildly or not at all.

sex discrimination, petitioner subsequently brought this suit against the Postmaster General of the United States in his official capacity,[2] pursuant to § 717 of Title VII, as amended, 42 U. S. C. § 2000e–16. After a bench trial, the United States District Court for the Eastern District of Missouri concluded that petitioner was a victim of discrimination and ordered his reinstatement with backpay. App. to Pet. for Cert. A–26. Relying on a decision of its controlling court, *Cross* v. *USPS*, 733 F. 2d 1327, 1332 (CA8 1984) (en banc), cert. denied, 470 U. S. 1051 (1985), the District Court refused to award prejudgment interest. App. to Pet. for Cert. A–21. (In *Cross*, an equally divided Court of Appeals had affirmed the same District Judge's conclusion that sovereign immunity barred an award of prejudgment interest in a Title VII suit against the Postal Service.)

The United States Court of Appeals for the Eighth Circuit affirmed the denial of prejudgment interest. *Loeffler* v. *Carlin*, 780 F. 2d 1365, 1370–1371 (1985). Concluding that the District Court's reliance on *Cross* was "understandable and proper," *id.*, at 1370, the court stated: "If the question of prejudgment interest is to be reconsidered, it should be reconsidered by the Court en banc." *Id.*, at 1371.

Subsequently, the Eighth Circuit undertook that en banc reconsideration, and, by a 6-to-5 vote, affirmed the judgment of the District Court. *Loeffler* v. *Tisch*, 806 F. 2d 817 (1986). The majority adopted the reasoning of the majority of the original panel in *Cross*, 733 F. 2d 1327, which concluded that Congress had not waived the sovereign immunity of the Postal Service with regard to prejudgment interest in a Title

---

[2] At the time this suit was filed, William F. Bolger, then Postmaster General, was the named defendant. While the case was pending on appeal, Bolger was succeeded as Postmaster General and as defendant by Paul N. Carlin and, subsequently, by Preston R. Tisch. After oral argument before this Court, Tisch was succeeded by Anthony M. Frank. General Frank has been substituted as respondent pursuant to this Court's Rule 40.3.

VII suit. The majority found its conclusion "strongly rein-forced" by this Court's recent decision in *Library of Congress* v. *Shaw*, 478 U. S. 310 (1986), which the majority inter-preted as "holding that Congress, in enacting Title VII, did not waive the Government's immunity from interest."[3] 806 F. 2d, at 818. In the majority's view, Congress' provision in the 1970 Postal Reorganization Act, 39 U. S. C. § 401(1), that the Postal Service may "sue and be sued" was irrelevant to the question before it, because "a sue-and-be-sued clause does not expand the obligations of a federal entity in a suit brought pursuant to another statute that is itself a waiver of immunity and which constitutes an exclusive remedy." 806 F. 2d, at 819.

The 5-judge dissent adopted the reasoning of the dissent in the *Cross* panel submission. That dissent had concluded that "limits on prejudgment interest have been imposed solely because of the barrier of sovereign immunity," 733 F. 2d, at 1332, and that the sue-and-be-sued clause in the Postal Reorganization Act had eliminated that barrier in actions against the Postal Service. The dissent noted this Court's observation in *Shaw:* "'The no-interest rule is . . . inapplica-ble where the Government has cast off the cloak of sover-eignty and assumed the status of a private commercial enter-prise.'" 806 F. 2d, at 822, quoting *Shaw*, 478 U. S., at 317, n. 5. In the dissent's view, the Postal Service fits within this exception and, therefore, "an award of prejudgment interest against the Postal Service under Title VII is not barred by sovereign immunity." 806 F. 2d, at 823.

---

[3] In *Shaw*, the Court held that sovereign immunity bars the payment of interest on attorney's fees awarded against the Library of Congress under Title VII. The Court's holding came "against the backdrop of the no-interest rule," *Shaw*, 478 U. S., at 319, which provides: "Apart from con-stitutional requirements, in the absence of specific provision by contract or statute, or 'express consent . . . by Congress,' interest does not run on a claim against the United States." *United States* v. *Louisiana*, 446 U. S. 253, 264–265 (1980), quoting *United States* v. *N. Y. Rayon Importing Co.*, 329 U. S. 654, 659 (1947).

Because of a conflict with the views of the Eleventh Circuit expressed in *Nagy* v. *USPS,* 773 F. 2d 1190 (1985), we granted certiorari to decide whether, in a Title VII suit, prejudgment interest may be awarded against the Postal Service. *Sub nom. Loeffler* v. *Tisch,* 483 U. S. 1004 (1987).

## II

### A

The question of statutory interpretation here presented, involving the interaction of the Postal Reorganization Act and Title VII, lends itself to straightforward resolution. Absent a waiver of sovereign immunity, the Federal Government is immune from suit. *United States* v. *Sherwood,* 312 U. S. 584, 586 (1941). Congress, however, has waived the sovereign immunity of certain federal entities from the times of their inception by including in the enabling legislation provisions that they may sue and be sued. In *FHA* v. *Burr,* 309 U. S. 242, 245 (1940), the Court explained:

> "[S]uch waivers by Congress of governmental immunity . . . should be liberally construed. . . . Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress

launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." (Footnote omitted.)

Accord, *Franchise Tax Board of California* v. *USPS*, 467 U. S. 512, 517–518 (1984); *Reconstruction Finance Corporation* v. *J. G. Menihan Corp.*, 312 U. S. 81, 84–85 (1941); see also *Keifer & Keifer* v. *Reconstruction Finance Corporation*, 306 U. S. 381 (1939). Encompassed within this liberal-construction rule is the principle "that the words 'sue and be sued' normally include the natural and appropriate incidents of legal proceedings." *J. G. Menihan Corp.*, 312 U. S., at 85.

In accord with this approach, this Court has recognized that authorization of suits against federal entities engaged in commercial activities may amount to a waiver of sovereign immunity from awards of interest when such awards are an incident of suit. For example, in *Standard Oil Co.* v. *United States*, 267 U. S. 76 (1925), the Court reviewed a suit brought under § 5 of the Act of September 2, 1914, ch. 293, 38 Stat. 711, on insurance claims issued by the Bureau of War Risk Insurance. The Court concluded: "When the United States went into the insurance business, issued policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business." 267 U. S., at 79. Accordingly, interest was allowed. *Ibid.* See also *National Home for Disabled Volunteer Soldiers* v. *Parrish*, 229 U. S. 494 (1913) (interest allowed against eleemosynary agency that Congress had authorized "to sue and be sued"). Cf. *Library of Congress* v. *Shaw*, 478 U. S., at 317, n. 5.

When Congress created the Postal Service in 1970, it empowered the Service "to sue and be sued in its official name."

39 U. S. C. § 401(1).  This sue-and-be-sued clause was a part of Congress' general design that the Postal Service "be run more like a business than had its predecessor, the Post Office Department." *Franchise Tax Board of California* v. *USPS*, 467 U. S., at 520.  In *Franchise Tax Board*, this Court examined, in the context of an order issued by a state administrative agency, the extent to which Congress had waived the sovereign immunity of the Postal Service.  After noting that "Congress has 'launched [the Postal Service] into the commercial world,'" *ibid.*, the Court held that the sue-and-be-sued clause must be liberally construed and that the Postal Service's liability must be presumed to be the same as that of any other business.  Because the order to the Postal Service to withhold employees' wages had precisely the same effect on the Service's ability to operate efficiently as did such orders on other employers subject to the state statute that had been invoked, and because the burden of complying with the order would not impair the Service's ability to perform its functions, the Court concluded that there was no basis for overcoming the presumption that immunity from the state order had been waived.  See *id.*, at 520, and n. 14.

Our unanimous view of the Postal Service expressed in *Franchise Tax Board* is controlling here.  By launching "the Postal Service into the commercial world," and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's "cloak of sovereignty" and given it the "status of a private commercial enterprise." *Shaw*, 478 U. S., at 317, n. 5.  It follows that Congress is presumed to have waived any otherwise existing immunity of the Postal Service from interest awards.

None of the exceptions to the liberal-construction rule that guides our interpretation of the waiver of the Postal Service's immunity operates to overcome this presumption.  Subjecting the Service to interest awards would not be inconsistent

with the Postal Reorganization Act, 39 U. S. C. § 101 *et seq.*, the statutory scheme that created the Postal Service, nor would it pose a threat of "grave interference" with the Service's operation. *FHA* v. *Burr*, 309 U. S., at 245. Finally, we find nothing in the statute or its legislative history to suggest that "it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense," *ibid.*, with regard to interest awards. To the contrary, since Congress expressly included several narrow and specific limitations on the operation of the sue-and-be-sued clause, see 39 U. S. C. § 409,[4] none of which is applicable here, the natural inference is that it did not intend other limitations to be implied.

Accordingly, we conclude that, at the Postal Service's inception, Congress waived its immunity from interest awards, authorizing recovery of interest from the Postal Service to the extent that interest is recoverable against a private party as a normal incident of suit.

B

Respondent concedes, and apparently all the United States Courts of Appeals that have considered the question agree, that Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers.[5] This

---

[4] Section 409 provides in part:

"(b) Unless otherwise provided in this title, the provisions of title 28 relating to service of process, venue, and limitations of time for bringing action in suits in which the United States, its officers, or employees are parties, . . . shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.

"(c) The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service."

[5] See Brief for Respondent 9. See also *Conway* v. *Electro Switch Corp.*, 825 F. 2d 593, 602 (CA1 1987); *Green* v. *USX Corp.*, 843 F. 2d 1511, 1530 (CA3 1988); *United States* v. *Gregory*, 818 F. 2d 1114, 1118 (CA4), cert. denied, 484 U. S. 847 (1987); *Parson* v. *Kaiser Aluminum & Chemical Corp.*, 727 F. 2d 473, 478 (CA5), cert. denied, 467 U. S. 1243 (1984); *EEOC* v. *Wooster Brush Co. Employees Relief Assn.*, 727 F. 2d 566,

conclusion surely is correct. The backpay award authorized by § 706(g) of Title VII, as amended, 42 U. S. C. § 2000e-5(g), is a manifestation of Congress' intent to make "persons whole for injuries suffered through past discrimination." *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 421 (1975).[6] Prejudgment interest, of course, is "an element of complete compensation." *West Virginia* v. *United States*, 479 U. S. 305, 310 (1987). Thus, since Title VII authorizes interest awards as a normal incident of suits against private parties, and since Congress has waived the Postal Service's immunity from such awards, it follows that respondent may be subjected to an interest award in this case.

## III

### A

In order to address respondent's arguments, it is necessary to explain briefly the manner in which Title VII provides a cause of action to federal employees. As originally enacted in 1964, Title VII, by excluding federal entities from its definition of employer, see § 701(b) of Title VII, 42 U. S. C. § 2000e(b), did not provide a cause of action to federal employees. *Brown* v. *GSA*, 425 U. S. 820, 825 (1976). In 1972, Congress amended Title VII by adding its § 717, which brought federal employees, including employees of the Postal Service, within the ambit of Title VII. Equal Employment

---

578–579 (CA6 1984); *Taylor* v. *Philips Industries, Inc.*, 593 F. 2d 783, 787 (CA7 1979); *Washington* v. *Kroger Co.*, 671 F. 2d 1072, 1078 (CA8 1982); *Domingo* v. *New England Fish Co.*, 727 F. 2d 1429, 1446 (CA9), modified on other grounds, 742 F. 2d 520 (1984); *Nagy* v. *USPS*, 773 F. 2d 1190 (CA11 1985). Cf. *EEOC* v. *County of Erie*, 751 F. 2d 79, 82 (CA2 1984) (interest allowed on backpay award under Equal Pay Act); *Shaw* v. *Library of Congress*, 241 U. S. App. D. C. 355, 361, 747 F. 2d 1469, 1475 (1984) (interest allowed on Title VII attorney's fees award), rev'd on other grounds, 478 U. S. 310 (1986).

[6] Indeed, to ensure that victims of employment discrimination would be provided complete relief, Congress also gave the courts broad equitable powers. See § 706(g) of Title VII, as amended, 42 U. S. C. § 2000e-5(g); see generally *Albemarle Paper Co.* v. *Moody*, 422 U. S., at 418–421.

Opportunity Act of 1972, 86 Stat. 111, 42 U. S. C. § 2000e–16. In so doing, Congress intended to provide federal employees with "'the full rights available in the courts as are granted to individuals in the private sector under Title VII.'" *Chandler* v. *Roudebush*, 425 U. S. 840, 841 (1976), quoting S. Rep. No. 92–415, p. 16 (1971). Section 717(a) mandates that all personnel actions affecting federal employees covered by that section "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U. S. C. § 2000e–16(a). Section 717(b) provides a detailed administrative enforcement mechanism, and § 717(c) permits an aggrieved employee to file a civil action in federal district court, provided the employee has met certain requirements regarding exhaustion of administrative remedies. Thus, in enacting § 717, Congress simultaneously provided federal employees with a cause of action under Title VII and effected a waiver of the Government's immunity from suit. See *Library of Congress* v. *Shaw*, 478 U. S., at 319. The waiver of sovereign immunity effected by § 717, however, was a limited one. "In making the Government liable as a defendant under Title VII, . . . Congress did not waive the Government's traditional immunity from interest." *Id.*, at 323.

Based on this background, respondent channels his attack into two principal arguments. First, respondent contends that the waiver of sovereign immunity effected by the "sue-and-be-sued" clause of the Postal Reorganization Act, 39 U. S. C. § 401(1), has no bearing here, regardless of its scope. In respondent's view, the only waiver of sovereign immunity relevant to a Title VII suit against the Postal Service is the waiver of sovereign immunity found in Title VII itself. Second, respondent argues that, even if the waiver of sovereign immunity provided by § 401 does control, the cause of action that § 717 affords to a Postal Service employee is distinct from the cause of action afforded a private-sector employee and does not provide a basis for an award of prejudgment interest. We examine these contentions in turn.

## B

In support of his argument that the sue-and-be-sued clause of the Postal Reorganization Act, 39 U. S. C. § 401(1), has no force in this case, respondent initially relies on Congress' failure, at the time it created the Postal Service in 1970, to extend Postal Service employees a cause of action under Title VII.[7] In respondent's view, this failure constituted a decision to leave intact what respondent characterizes as the "explicit" decision of the Congress that enacted Title VII in 1964 to preserve the sovereign immunity of federal employers in Title VII suits. But the history of the Postal Reorganization Act discussed in n. 7, *supra*, with its emphasis on the availability of strong remedies for discrimination in the federal employment context, makes clear that Congress' failure to extend Title VII protections to Postal Service employees did not reflect an intent to circumscribe the waiver of sovereign immunity effected by the sue-and-be-sued clause, but, rather, was a determination that a Title VII cause of action was unnecessary in light of these alternative remedies. The reason Postal Service employees could not bring an employment discrimination suit under Title VII in 1970—indeed, the

---

[7] When the Senate was considering its version of the Postal Reorganization Act, Senator Cook proposed a floor amendment "to give postal service employees the equal employment opportunity rights provided by title VII of the Civil Rights Act of 1964, that employees in private industry have benefited from since 1964." 116 Cong. Rec. 22279 (1970). The Senate approved the amendment by a 93–0 vote. See *id.*, at 22279–22280. The Cook amendment was deleted in conference, however, because the conferees were persuaded that the "present law affecting all Federal employees, including employees under the new Postal Service, guarantee[d] antidiscrimination provisions . . . of greater benefit . . . than the provisions of title VII of the Civil Rights Act of 1964." *Id.*, at 26953 (remarks of Sen. McGee); see also, *id.*, at 26956, 26957 (remarks of Sen. McGee); *id.*, at 27597 (remarks of Rep. Daniels). Senator McGee, who presented the Conference Report to the Senate, "guarantee[d]" that if the current bill did not "achieve the laudable purpose that the Cook amendment intended," the Senate would immediately enact appropriate legislation. *Id.*, at 26957 (remarks of Sen. McGee).

reason that federal employees generally could not do so—stemmed not from the Postal Reorganization Act, but from a restriction in Title VII itself: the exclusion of federal entities from the definition of the term "employer." The Postal Reorganization Act is utterly silent as to Title VII. We reject the notion that Congress' silence when it creates a new federal entity, with regard to a cause of action that is generally unavailable to federal employees, can be construed as a limitation on the waiver of that entity's sovereign immunity effected by the inclusion of a sue-and-be-sued clause.

Respondent would find further support for his argument that the sue-and-be-sued clause is irrelevant to this case in the manner in which Congress extended a Title VII cause of action to federal employees in 1972. Specifically, respondent relies on a distinction between causes of action that may be asserted against commercial entities generally, as, for example a state garnishment statute, see *Franchise Tax Board of California* v. *USPS*, 467 U. S. 512 (1984), and causes of action, such as § 717 of Title VII, that contain special procedures and limitations applicable only to federal defendants. Respondent contends that while a sue-and-be-sued clause may apply to a suit against a federal entity in the former class of actions, it has no bearing in the latter. We are not persuaded by this argument for two reasons.

First, this is an argument for an implied exception to the waiver of sovereign immunity effected by a sue-and-be-sued clause. Yet respondent offers no reason for concluding that Congress intended his implied exception to be added to those that this Court articulated in *FHA* v. *Burr*, 309 U. S., at 245, and we see no reason why we should do so.

Second, when Congress intends the waiver of sovereign immunity in a new cause of action directed against federal entities to be exclusive,—in effect, to limit the force of "sue-and-be-sued" clauses—it has said so expressly. Congress' waiver of the sovereign immunity of the United States for certain torts of federal employees, in the Federal Tort Claims

Act (FTCA), 28 U. S. C. §§ 1346, 2671–2680, provides an example. Prior to the FTCA's enactment, certain federal agencies were already suable in tort. Although Congress enacted the FTCA to allow suits against many agencies that previously had been immune from suits in tort, it also wished to "place torts of 'suable' agencies of the United States upon precisely the same footing as torts of 'nonsuable' agencies." H. R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945). Accordingly, Congress expressly limited the waivers of sovereign immunity that it had previously effected through "sue-and-be-sued" clauses and stated that, in the context of suits for which it provided a cause of action under the FTCA, "sue-and-be-sued" agencies would be subject to suit only to the same limited extent as agencies whose sovereign immunity from tort suits was being waived for the first time:

> "The authority of any federal agency, to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." 28 U. S. C. § 2679(a).

In contrast, neither the language of § 717 of Title VII nor its legislative history contains an expression that the waiver of sovereign immunity it effected was intended also to narrow the waiver of sovereign immunity of entities subject to sue-and-be-sued clauses. Accordingly, we reject respondent's contention that 39 U. S. C. § 401(1) has no application here.[8]

---

[8] Respondent also seeks comfort from the concededly technical distinction that this suit, in accordance with the provisions of § 717(c) of Title VII, 42 U. S. C. § 2000e–16(c), named the head of the Postal Service as defendant, while 39 U. S. C. § 401(1) makes the Postal Service amenable to suit "in its official name." In *FHA* v. *Burr*, 309 U. S. 242, 249–250 (1940), however, we found such a distinction between a suit against the head of an agency and a suit against the agency itself irrelevant to the force of a "sue-and-be-sued" clause. In *Burr*, the "sue-and-be-sued" clause in § 1 of the National Housing Act, 48 Stat. 1246, as amended by § 344 of the Banking

## C

Respondent next argues that, even if the waiver of sovereign immunity effected by § 401(1) is controlling, an award of prejudgment interest is inappropriate because the statute that provides petitioner with his cause of action, § 717 of Title VII, does not authorize interest awards. Respondent starts from the premise that had Congress expressly stated that prejudgment interest is unavailable in actions under § 717, the outcome of this case would be beyond dispute. Therefore, it is claimed, "[t]he fact that the 'no-interest' rule is not made explicit in the statute, but rather is a conclusion drawn by this Court in *Shaw* . . . , does not make the rule any less binding." Brief for Respondent 16. This argument, in our view, misunderstands both the nature of the remedy § 717 affords and the basis of our holding in *Shaw*.

Without doubt, petitioner's cause of action in this case is derived from § 717. We do not disagree with respondent that, had § 717 explicitly stated that the cause of action it provided did not include prejudgment interest, such interest would be unavailable in this case. But Congress made no express statement of that kind. To the contrary, Congress expressly incorporated in § 717 provisions of Title VII that allow an interest award. Specifically, § 717(c), 42 U. S. C. § 2000e–16(c), provides that, after pursuing various manda-

Act of 1935, 49 Stat. 722, applied to the Administrator of the Federal Housing Authority acting in his official capacity. The Court concluded that this waiver of sovereign immunity permitted actions against the Authority itself, because under the terms of the Act, all the powers of the Authority were exercised through the Administrator. This case presents the inverse situation: the "sue-and-be-sued" clause authorizes suits against the agency, and the defendant before the Court is the head of the agency acting in his official capacity. However, the same logic applies. Whenever the head of the Postal Service acts in his official capacity, he is acting in the name of the Postal Service. Thus, here, as in *Burr*, the acts of the named defendant are always chargeable as acts of the person or entity subject to the sue-and-be-sued clause. We therefore are not persuaded by respondent's procedural distinction.

tory administrative remedies, an unsatisfied § 717 plaintiff "may file a civil action as provided in section 2000e–5 of this title," which governs enforcement actions against private employers.

Thus, although petitioner's cause of action under § 717 is circumscribed by mandatory administrative prerequisites that are distinct from the prerequisites for a civil suit brought against a private employer, a § 717 suit, once commenced, is delineated by the same provisions as a suit against a private employer. Most importantly for the purposes of this case, § 717(d) explicitly incorporates § 706(g) of Title VII into the cause of action provided. Section 706(g) allows a court to "order such affirmative action as may be appropriate, . . . includ[ing] . . . back pay . . . , or any other equitable relief as the court deems appropriate." 42 U. S. C. § 2000e–5(g). This provision thus governs the remedies available in both a Title VII suit brought against a federal employer under § 717 and a Title VII suit brought against a private employer. Cf. *Chandler* v. *Roudebush*, 425 U. S., at 843–848. And, just as this section provides for prejudgment interest in a Title VII suit against a private employer, it provides for prejudgment interest in a Title VII suit brought under § 717.

Respondent's view that *Shaw* stands for the proposition that § 717 implicitly states that prejudgment interest is unavailable in all suits brought under that section misunderstands the basis of our holding in that case. In *Shaw*, the Court faced the question whether § 706(k) of Title VII, 42 U. S. C. § 2000e–5(k), which provides that a party prevailing against the United States may recover attorney's fees from the United States, waived the sovereign immunity of the Library of Congress with respect to interest on an attorney's fees award. Unlike the Postal Service, the Library of Congress was not a "sue-and-be-sued" agency that Congress had "'launched . . . into the commercial world,'" and thereby broadly waived sovereign immunity. *Franchise Tax Board of California* v. *USPS*, 467 U. S., at 520, quoting *FHA* v.

*Burr*, 309 U. S., at 245. Thus, the starting point for our analysis was the "no-interest rule," which is to the effect that, absent express consent by Congress, the United States is immune from interest awards. See *Shaw*, 478 U. S., at 314. The dispositive question was not whether Title VII provided a cause of action that would allow recovery of interest, but, rather, whether Title VII contained an express waiver of the Library of Congress' immunity from interest. Because no such waiver is contained within Title VII, the no-interest rule barred recovery of interest from the Library of Congress on the plaintiff's attorney's fees award. This conclusion had nothing to do with the scope of a § 717 cause of action.

The Court expressly noted in *Shaw*: "The no-interest rule is . . . inapplicable where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." 478 U. S., at 317, n. 5. In creating the Postal Service, Congress did just that, and therefore, the no-interest rule does not apply to it. Thus, the search for an express waiver of immunity from interest within Title VII, which is all that *Shaw* was about, is unnecessary in this case. As discussed above, § 401 of the Postal Reorganization Act provides the waiver of sovereign immunity from interest awards against the Postal Service, and § 717 of Title VII provides the cause of action under which petitioner may recover interest.

## IV

Accordingly, we conclude that interest may be awarded against the Postal Service in a Title VII suit. The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUS-
TICE O'CONNOR join, dissenting.

Essentially for the reasons stated by the en banc Court of
Appeals below, I believe that prejudgment interest is not
available in Title VII suits against the Postal Service. Ac-
cordingly, I respectfully dissent.