**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NANCY FIEDLER, Personal Representative of the Estate of Lisa Fiedler (Deceased); MATTHEW GUINEY, Personal Representative of the Estate of Marybeth Guiney (Deceased); OLGA FAYNSHTEYN, Personal Representative of the Estate of Yuliya Krashennaya (Deceased); KATIE OSBORNE, Personal Representative of the Estate of Daniel Garcia (Deceased); CHRISTINA QUITASOL, Personal Representative of the Estate of Michael Quitasol (Deceased); SARMA WILLIAMS, Personal Representative of the Estate of Vaidehi Devi Campbell Williams (Deceased); CHRISTINE ALEXANDRA DIGNAM, Personal Representative of the Estate of Justin Dignam (Deceased); JASMINE LORD, Personal Representative of the Estate of Charles McIllvain (Deceased); VICTORIA E. MOORE, Personal Representative of the Estates of Raymond Scott Chan (Deceased) and Kendra Chan (Deceased); YUKA OHASHI MERRITT, Personal Representative | No. 24-5064<br><br>D.C. No. 2:21-cv-07065-PA-MRW<br><br><br>OPINION |

of the Estate of Yuko Hatano (Deceased); VIKRAM SINGH, Personal Representative of the Estate of Sunil Singh Sandhu (Deceased); NINA HUTTEGGER, Personal Representative of the Estate of Juha-Pekka Ahopelto (Deceased); YADIRA ALVAREZ, Personal Representative of the Estate of Berenice Felipe (Deceased); SEJAY TAN, Personal Representative of the Estate of Wei Tan (Deceased); ERIC BALTZ, Personal Representative of the Estate of Neal Baltz (Deceased); ANTHONY BEITZINGER, Personal Representative of the Estate of Patricia Beitzinger (Deceased); SHRUTI DEOPUJARI, Personal Representative of the Estate of Sanjeeri Deopujari (Deceased); ATLEE FRITZ, Personal Representative of the Estate of Andrew Fritz (Deceased); SEEMA SHARMA, Personal Representative of the Estate of Kaustubh Nirmal (Deceased); MARGARET STROM, Personal Representative of the Estate of Ted Strom (Deceased); RICHARD X. LIU, Personal Representative of the Estate of Xiang Lin (Deceased); SUSANA SOLANO ROSAS, Personal Representative of the Estates of Evanmichel Solano

Quitasol (Deceased), Angela Rose
Solano Quitasol (Deceased), and
Nicole Solano Quitasol (Deceased);
ARIEL TAKVAM, Personal
Representative of the Estate of
Kristian Takvam (Deceased);
DOMINIC MICAEL SELGA,
Personal Representative of the Estate
of Fernisa June Sison (Deceased);
ROBERT KURTZ, Personal
Representative of the Estate of
Alexandra Haley Kurtz (Deceased);
CHERIE MCDONOUGH, Personal
Representative of the Estate of
Alexandra Haley Kurtz (Deceased);
JEAN ANNE ALLEN, as Executor
of the Estate of Steven John Salika,
Executor of the Estate of Carol Diana
Adamic and Administrator of the
Estate of Tia Nicole Adamic Salika;
JAMES ADAMIC, individually and
as beneficiary of the Estate of Carol
Diana Adamic (Deceased);
ANGELIKA ADAMIC, individually
and as beneficiary of the Estate of
Carol Diana Adamic (Deceased);
MARK ADAMIC, individually and
as beneficiary of the Estate of Carol
Diana Adamic (Deceased);
SHIRLEY SALIKA, individually and
as beneficiary of the Estate of Steven
John Salika (Deceased) and Tia
Nicole Salika (Deceased); DANIEL

POH-HOCK CHUA, Personal
Representative of the Estate of
Kristina Oline Finstad (Deceased);
RYAN SIMS, individually; CHENG
LENG TAN; HENRY GARCIA,
Beneficiary of the Estate of Daniel
Garcia (Deceased); GREGORY
KRASHENNY, Beneficiary of the
Estate of Yuliya Krashennaya
(Deceased),

*Plaintiffs - Appellants*,

v.

UNITED STATES OF AMERICA,

*Defendant - Appellee*.

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted October 22, 2025
San Francisco, California

Filed January 30, 2026

Before: Richard R. Clifton, John B. Owens, and Patrick J.
Bumatay, Circuit Judges.

Opinion by Judge Owens;
Dissent by Judge Bumatay

# SUMMARY[*]

## Suits in Admiralty Act

The panel affirmed the district court's dismissal, under the discretionary function doctrine, of an action against the United States under the Suits in Admiralty Act ("SIAA") brought by personal representatives of people who were killed and injured in a fire on the passenger dive boat *M.V. Conception*.

Plaintiffs alleged that the United States Coast Guard was negligent in authorizing the *Conception* to operate despite various purported safety violations.

The panel held that the discretionary function exception to the Federal Tort Claims Act ("FTCA") applies to the SIAA. The panel held that *Thacker v. Tennessee Valley Authority*, 587 U.S. 218, 223 (2019), did not effectively overrule *Earles v. United States*, 935 F.2d 1028, 1032 (9th Cir. 1991) (holding that the discretionary function to the FTCA applies to the SIAA), and *Earles* remains controlling precedent.

The panel held that the district court correctly applied the discretionary function exception. First, because no federal statute, regulation, or policy mandates that Coast Guard inspectors identify and correct the fire hazards alleged— plastic trash cans and chairs and improper electrical wiring—the inspectors' alleged misfeasance was discretionary. Second, Coast Guard inspections are

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

textbook discretionary judgments, rooted in public policy considerations, of the kind that the discretionary function exception was designed to shield. Accordingly, the district court correctly dismissed the suit for lack of subject matter jurisdiction.

Dissenting, Judge Bumatay would hold that the plain text of the SIAA expressly waives the United States' sovereign immunity over admiralty cases involving its vessels and personnel. He would also hold that *Earles* has been effectively overruled by *Thacker*, and would allow this suit to proceed.

**COUNSEL**

Gretchen M. Nelson (argued) and Gabriel S. Barenfeld, Nelson & Fraenkel LLP, Los Angeles, California; Matthew D. Davis, Michael A. Kelly, and Spencer Pahlke, Walkup Melodia Kelly & Schoenberger, San Francisco, California; John R. Hillsman, McGuinn Hillsman & Palefsky, San Francisco, California; E. Douglas DiSandro Jr., Robert J. Mongeluzzi, and Jeffrey P. Goodman, Saltz Mongeluzzi & Bendesky PC, Philadelphia, Pennsylvania; Ilya D. Frangos, Galine Frye Fitting & Frangos, San Mateo, California; Robert H. Zimmerman, Zimmerman Law PC, Sacramento, California; Jennifer Fiore and Sophia Achermann, Fiore Achermann, San Francisco, California; A. Edward Fields, W. Russell Fields, and W. Van Fields, The Law Offices of W. Russell Fields, Sacramento, California; Alan Van Gelder, Greene Broillet & Wheeler LLP, El Segundo, California; Todd Abbott, Abbott & Abbott Law, Chula Vista, California; Cory Itkin, Arnold & Itkin LLP, Houston,

Texas; Kevin Mahoney and Daniel Rose, Kreindler & Kreindler LLP, New York, New York; Theodore Poppinga, Schuering Zimmerman & Doyle LLP, Sacramento, California; for Plaintiffs-Appellants.

Jill Rosa (argued), Senior Trial Counsel; Scott Perrygo and Kyle Fralick, Trial Attorneys; Eric Kaufman-Cohen, Attorney in Charge, West Coast; Civil Division; United States Department of Justice, San Francisco, California; Torts Branch; Gerard Sinzdak, Assistant Director, Appellate Staff; Yaakov M. Roth, Acting Assistant Attorney General; Civil Division; United States Department of Justice, Washington, D.C.; Frank J. Anders, Trial Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; David M. Harris, Assistant United States Attorney, Chief, Civil Division; Bilal A. Essayli, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Defendant-Appellee.

# OPINION

OWENS, Circuit Judge:

On September 2, 2019, a devastating fire engulfed passenger dive boat *M.V. Conception*. The inferno killed thirty-four people, and extensive litigation followed. In this case, personal representatives of the deceased and one injured surviving crew member ("Plaintiffs") have sued the United States under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 30901. They allege that the United States Coast Guard—which previously inspected the *Conception* and declared it safe—acted negligently and that its malfeasance led to this tragedy. The district court dismissed the case under the discretionary function doctrine. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  FACTUAL          AND          PROCEDURAL BACKGROUND

### A.  The Tragic Voyage

On August 31, 2019, thirty-three passengers and six crew members boarded the *Conception* for a three-night scuba diving excursion. The vessel had three levels: (1) an upper deck with the wheelhouse and crew quarters, (2) a main deck with the galley and bathrooms, and (3) a lower deck with bunks, where all passengers and one crew member slept. In the early hours of September 2, 2019, a fire ignited on the vessel. The upper deck crew awoke to the main deck in flames and abandoned ship. But all thirty-four people trapped below deck perished. Post-accident inspectors identified the vessel's electrical system as well as electronic devices and batteries as possible ignition sources, and plastic trash cans and chairs as potential accelerants.

Plaintiffs sued the Government under the SIAA, alleging that the Coast Guard was negligent in authorizing the *Conception* to operate despite various purported safety violations, including faulty electrical wiring, plastic trash cans, and plastic chairs.

## B. The Statutory and Regulatory Regime

One of the Coast Guard's eleven missions is marine safety. 6 U.S.C. § 468(a). To this end, the Coast Guard must "promulgate and enforce regulations for the promotion of safety of life and property" at sea. 14 U.S.C. § 102(3). These regulations include vessel safety standards, *id.* § 503, for "small passenger vessels," otherwise known as "T-boats." 46 U.S.C. § 3301(8); *see also* 46 C.F.R. §§ 175.100–185.910 (Subchapter T).

The Coast Guard inspects T-boats for "compliance with the standards required by" Subchapter T.[1] 46 C.F.R. § 176.800(a). Subchapter T mandates that all T-boats have a Coast Guard Certificate of Inspection ("COI") to carry commercial passengers. *Id.* § 176.100(a); *see also* 46 U.S.C.

---

[1] In 1996, the T-boat regulations were updated and modified. Vessels built before March 10, 1996, are generally subject to old Subchapter T regulations ("Old T Regulations"), except for some new Subchapter T regulations ("New T Regulations"), which apply no matter when the vessel was built. *See, e.g.*, 46 C.F.R. § 177.115(b) (renewal of "outfit items such as furnishings and mattresses" must comply with New T Regulations); *id.* § 183.115(a)–(c) (navigation lights, portable lights, and new installations of electrical equipment material and the repair or replacement of wire and cable are subject to New T Regulations). The *Conception* was an Old T vessel built in 1981, meaning it was generally subject to the Old T Regulations. But the parties dispute whether some of the New T Regulations apply. As discussed *infra*, this distinction does not matter here, as neither set of regulations imposed mandatory duties on how the Coast Guard should conduct its inspections.

§ 3307 (requiring vessel inspections). To obtain a COI, a vessel must undergo an initial inspection by the Coast Guard, 46 C.F.R. §§ 176.400–176.402, and after five years, reinspection to renew its COI, *id.* § 176.404; 46 U.S.C. § 3307(2). T-boats must also undergo annual inspections. 46 C.F.R. § 176.500(b).

In conducting the inspections, the Coast Guard must "consistently interpret regulations and standards . . . to avoid disruption and undue expense to industry." 46 U.S.C. § 3305(d)(1). The regulations themselves provide general guidance for what to do during inspections. *See, e.g.*, 46 C.F.R. § 176.402(b) (during the initial inspection, certain aspects of the vessel "may be checked" to determine if the vessel is satisfactory); *id.* § 176.404(a) (subsequent inspections "normally include[]" certain items); *id.* § 176.800(b) (when applying inspection standards, "due consideration must be given to the hazards involved in the operation permitted by a vessel's [COI]").

## C. The Coast Guard's Inspections of the *Conception*

The *Conception* had received its most recent COI in November 2014. The Coast Guard performed its annual inspection in February 2019 and deemed the vessel "fit for route and service as specified on the current COI," allowing the *Conception* to continue operating. Neither during that inspection, nor other annual inspections that preceded it, did the Coast Guard identify electrical wires, plastic trashcans, or plastic furnishings as safety hazards.

## D. Procedural History

Plaintiffs sued the United States in September 2021 and filed a First Amended Complaint in February 2022 for

wrongful death, survival damages, and personal injury under the SIAA, which has a waiver of sovereign immunity. 46 U.S.C. § 30903(a).

In May 2024, after a delay due to criminal charges against the *Conception*'s captain, the Government filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the discretionary function exception to the SIAA's waiver of sovereign immunity.[2] Plaintiffs responded that the motion should be continued and decided on a summary judgment standard and also contended that the Government's challenged conduct was not discretionary.

In August 2024, the district court granted the Government's motion to dismiss under the discretionary function exception. It explained that "the applicable statutes, regulations, and policies governing the Coast Guard's inspection of passenger vessels vest both the Coast Guard and the individual inspectors with the type of discretion that satisfies the Supreme Court's two-part test for application of the discretionary function exception."

---

[2] The discretionary function exception is rooted in the Federal Tort Claims Act ("FTCA"). "The FTCA waives sovereign immunity from suits arising out of certain negligent acts of federal employees." *Chang v. United States*, 139 F.4th 1087, 1092 (9th Cir. 2025) (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 1346(b)(1). However, under the FTCA, the discretionary function exception explicitly reinstates the United States' immunity for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

## II.   DISCUSSION

### A.  Standard of Review

We review de novo a dismissal for lack of subject matter jurisdiction under the discretionary function exception. *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011). "The government bears the burden of proving that the discretionary function exception applies."  *Id.* (citation omitted).  We review underlying factual findings for clear error.  *Lam v. United States*, 979 F.3d 665, 670 (9th Cir. 2020).

### B.  The Discretionary Function Exception Bars the Instant Suit

#### 1.  The Discretionary Function Exception Applies to the SIAA

Before determining whether the Coast Guard's conduct here fell within the discretionary function exception, we must confirm if the exception applies to the SIAA's immunity waiver in the first place.

Over three decades ago, this court squarely addressed this issue in *Earles v. United States*, holding that the discretionary function exception to the FTCA also "applies to the SIAA."  935 F.2d 1028, 1032 (9th Cir. 1991).  In *Earles*, the plaintiffs sued the United States under the SIAA for a boating accident arising from the Navy's alleged negligence in failing to illuminate a mooring buoy.  *Id.* at 1029–30.  Although "the SIAA does not expressly immunize the government for the exercise of a discretionary function" like the FTCA does, we nonetheless extended the discretionary function exception to the SIAA.  *Id.* at 1031.  Holding otherwise, we explained, "would subject all administrative and legislative decisions concerning the

public interest in maritime matters . . . to independent judicial review" if "those policy judgments were to cause private injuries." *Id.* at 1032 (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 35 (2d. Cir. 1989)). And every circuit to have considered the issue has agreed.[3] But more recent events require us to examine whether *Earles* remains good law.

Plaintiffs argue for the first time on appeal that *Thacker v. Tennessee Valley Authority*, 587 U.S. 218, 223 (2019), effectively overruled *Earles*.[4] In *Thacker*, the Supreme Court considered whether the discretionary function exception applied to the Tennessee Valley Authority

---

[3] *See, e.g.*, *McMellon v. United States*, 387 F.3d 329, 338 (4th Cir. 2004) (en banc) (listing all ten circuits' cases holding that the discretionary function exception applies to the SIAA and becoming the last circuit to join the other circuits); *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1086 (D.C. Cir. 1980); *Gercy v. United States*, 540 F.2d 536, 539 (1st Cir. 1976); *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d at 35; *Sea-Land Serv., Inc. v. United States*, 919 F.2d 888, 893 (3d Cir. 1990); *Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir. 1986); *Gemp v. United States*, 684 F.2d 404, 408 (6th Cir. 1982); *Bearce v. United States*, 614 F.2d 556, 559–60 (7th Cir. 1980); *Tew v. United States*, 86 F.3d 1003, 1005 (10th Cir. 1996); *Williams v. United States*, 747 F.2d 700, 700 (11th Cir. 1984) (per curiam).

[4] The Government argues that Plaintiffs waived the *Thacker* issue, as they neither raised it in the district court nor argued that the discretionary function exception was inapplicable to the SIAA. But we nonetheless consider this issue, as it is "purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Kaass L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (citation omitted). Furthermore, "because the applicability of [the discretionary function exception] affects our jurisdiction, we must consider it sua sponte," regardless of whether a party had raised the issue. *Mirmehdi v. United States*, 689 F.3d 975, 984 n.7 (9th Cir. 2012) (citation omitted).

("TVA"), a public entity that supplies electric power to millions of Americans in its region "[j]ust as . . . privately owned power companies (*e.g.*, Con Edison, Dominion Energy) do so in theirs." *Id.* at 221. The TVA Act waived the TVA's sovereign immunity, stating that it "[m]ay sue and be sued in its corporate name." *Id.* at 220 (citation omitted).

The Court unanimously held that "the waiver of sovereign immunity in TVA's sue-and-be-sued clause is [not] subject to a discretionary function exception, of the kind in the FTCA." *Id.* at 223. The TVA Act explicitly provides that the TVA may be sued, and does not "expressly recognize[] immunity for discretionary functions." *Id.* And while the TVA Act contains specific exceptions to the waiver of sovereign immunity, it "contains no exceptions relevant to tort claims, let alone one turning on whether the challenged conduct is discretionary." *Id.*

The Court also balked at the government's suggestion that the TVA Act universally imported an implied restriction to the waiver of sovereign immunity for discretionary functions. The Court acknowledged that *Federal Housing Administration v. Burr*, 309 U.S. 242, 245 (1940), outlined circumstances when "sue-and-be-sued" clauses can be interpreted in a narrower sense: (1) when the "type[] of suit [at issue is] not consistent with the statutory or constitutional scheme," or (2) the restriction is "necessary to avoid grave interference with the performance of a governmental function." *Thacker*, 587 U.S. at 224 (alteration in original) (quoting *Burr*, 309 U.S. at 245). But the Court rejected the government's separation of powers argument and noted that *Burr*'s latter implied exception confers the "possibility of immunity . . . only when a suit challenges governmental activities—the kinds of functions private parties typically do

not perform." *Id.* at 228. "When the TVA or similar body operates in the marketplace as private companies do, it is liable as they are for choices and judgments." *Id.* at 227–28.

Because of the TVA's hybrid status, the Court left for the lower courts to determine on remand whether the TVA was immune from the case at bar, which meant first deciding "whether the conduct alleged to be negligent [was] governmental or commercial in nature." *Id.* at 229.

Plaintiffs argue that *Earles* is "irreconcilable" with *Thacker*. We disagree.[5] "Generally, a panel opinion is binding on subsequent panels unless and until overruled by an en banc decision of this circuit." *United States v. Eckford*, 77 F.4th 1228, 1233 (9th Cir. 2023) (citation omitted). But one exception to this rule is where "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority." *Miller*, 335 F.3d at 900. "[T]he clearly irreconcilable requirement is a high standard that demands more than mere tension between the intervening higher authority and prior circuit precedent." *Eckford*, 77 F.4th at 1233 (alternation in original) (internal quotation marks and citation omitted). Thus, "[i]f we can apply our precedent consistently with that of the higher authority, we must do so." *Id.* (citation omitted).

---

[5] The dissent argues that our court (like many others) erred in *Earles* by extending the discretionary function exception to the SIAA. Yet our inquiry today is a narrower one: it is whether *Earles* is "clearly irreconcilable" with *Thacker*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). And *Thacker* did not decide if the SIAA, a statute distinct from the TVA Act, lacks a discretionary function exception. For the reasons set forth in our opinion (reasons the dissent does not dispute), we respectfully disagree that we can overrule *Earles* at this point.

While *Thacker* brings *Earles* into question, we cannot say this tension rises to the level of "clear irreconcilability." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1074 (9th Cir. 2018) ("Nothing short of 'clear irreconcilability' will do."). We acknowledge that neither the TVA Act nor the SIAA "expressly recognize[] immunity for discretionary functions." *Thacker*, 587 U.S. at 223. But this shared feature alone is not enough for *Thacker* to "undercut the theory or reasoning underlying [*Earles*] in such a way that the cases are clearly irreconcilable."[6] *Miller*, 335 F.3d at 900. Indeed, none of the tenets undergirding *Thacker* clearly undercut the reasoning behind *Earles*, as these cases differ in two key respects.

First, unlike the TVA Act, the SIAA does not involve a sue-and-be-sued clause. Instead, the SIAA's waiver of sovereign immunity is more conditional. It provides that "[i]n a case in which, . . . *if* a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation." 46 U.S.C. § 30903(a) (emphasis added). This textual

---

[6] The only other court to consider this question concluded that *Thacker* did not overrule Eleventh Circuit precedent holding that the discretionary function exception applies to the SIAA. *See Jones v. United States*, 664 F. Supp. 3d 1311, 1319–20 (N.D. Ala. 2023). Notably, however, Chief Judge Pryor disagreed. In a statement respecting the denial of initial hearing en banc, he wrote that the Eleventh Circuit's case law importing a discretionary function exception into the SIAA was "wrong the day [the Eleventh Circuit] decided it," and "[t]o the extent [its] error . . . was not obvious before, the Supreme Court removed any doubt in *Thacker*." *Jones v. United States*, 155 F.4th 1270, 1270–71 (11th Cir. 2025) (Pryor, C.J.) (a statement respecting the denial of initial hearing en banc). As detailed *infra*, we respectfully disagree with Chief Judge Pryor's application of *Thacker* to preexisting SIAA case law.

distinction matters because of the long line of cases concerning "sue-and-be-sued" clauses that influenced the Court in *Thacker*. For instance, the *Thacker* Court discussed implied exceptions to the waiver of sovereign immunity in part because of *Burr*, which also involved a sue-and-be-sued clause. *Thacker*, 587 U.S. at 224. And taking note from *Burr*, the Court emphasized that such clauses "should be liberally construed." *Id.* (quoting *Burr*, 309 U.S. at 245); *see also id.* at 226–27 (noting that *Burr* and later decisions containing sue-and-be-sued clauses have distinguished between the governmental and the commercial).

Next, *Thacker* concerned a hybrid entity, which "sometimes resemble[d] a government actor, sometimes a commercial one." *Id.* at 228. While the TVA could not invoke sovereign immunity for its commercial conduct, the possibility of "an implied limit on the [immunity waiver] clause" for its governmental conduct remained. *Id.* at 229. Unlike the TVA, the Navy in *Earles* and the Coast Guard here are not mixed entities conducting private sector business. Rather, they are both traditional government actors performing traditional "governmental activities," for which the *Thacker* Court explicitly preserved the "possibility of immunity." *Id.* at 228; *see also United States v. Odneal*, 565 F.2d 598, 600–01 (9th Cir. 1977) (noting that the Coast Guard's primary functions are to enforce federal laws and regulations to promote the "safety of life and property on the high seas") (citing 14 U.S.C. § 102)).

Accordingly, we cannot say that *Thacker*, which addressed a sue-and-be-sued clause and the hybrid TVA structure, is "clearly irreconcilable" with *Earles*, which involved different statutory language and a traditional government actor. Thus, we must continue to treat *Earles* as controlling precedent.

## 2.  The District Court Correctly Applied the Discretionary Function Exception

We now consider whether the discretionary function exception should apply here.  Plaintiffs allege that the Coast Guard had a duty to identify and compel correction of alleged fire hazards, including improper electrical wiring, plastic trash cans, and plastic chairs.  A two-part test governs the discretionary function exception's application.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  A court first asks whether "the challenged actions involve an element of judgment or choice."  *Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023) (internal quotation marks and citation omitted).  If so, the court then asks whether "the judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* (citation omitted).  Applying this test, we conclude that the discretionary function exception bars recovery here.

### a.  Element of Judgment or Choice

We begin by inquiring "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action."  *Id.* (citation omitted).  Where a government employee's action is "specifically prescribed by 'a federal statute, regulation, or policy,'" the action is nondiscretionary.  *Id.* (citation omitted).  And importantly, where a government employee's action is discretionary, "whether the discretion involved was abused makes no difference; the government will still prevail."  *Lam*, 979 F.3d at 673.

Here, Coast Guard inspectors were not mandated to identify the electrical wires, plastic trash cans, and plastic

chairs as fire hazards. While vessel inspections themselves are mandatory, *see* 46 C.F.R. § 176.500(b), inspectors have discretion in *how* to conduct such inspections. Namely, both the Old and New T Regulations do not require inspectors to identify and correct the particular fire hazards alleged here. The Old T Regulations provide only that "the marine inspector shall require that all observed unsafe practices and hazardous situations be corrected," but do not define what constitutes "unsafe practices" or "hazardous situations." *Id.* § 176.25-50(a) (1995); *see also, e.g.*, *Schurg*, 63 F.4th at 833 (concluding that an instruction for the Forest Service to consult authorities "if suppression activities have a high probability of occurring on private lands" involved discretion because it failed to define "suppression activities" or "high probability"). The same is true for the New T Regulations. 46 C.F.R. § 176.830(a) (stating only that "all observed unsafe practices, fire hazards, and other hazardous situations must be corrected").

And to the extent the New T Regulations single out plastic trash cans or chairs, there is still no duty for inspectors to identify these as hazards. *See, e.g.*, *id.* § 177.405(f) (noting that "waste receptacles must be constructed of noncombustible materials," "[u]nless other means are provided to ensure that a potential waste receptacle fire would be limited to the receptacle"); *id.* § 116.423(b) (specifying only "[p]assageways and stairway enclosures" as requiring "fire resistant furnishings"). Similarly, cable and wiring regulations do not require inspectors to identify allegedly faulty wiring. *See, e.g.*, *id.* § 176.806(a) (noting that vessels' electrical equipment inspections could include "[i]nspection of all cable as far as practicable"); *id.* § 183.340(b)(1) (requiring cable and wire

to "[h]ave stranded copper conductors with sufficient carrying capacity").

The regulations even preserve the Coast Guard's discretion in conducting inspections. Section 176.402 provides that the "initial inspection *may* include an inspection" of items such as "[s]anitary conditions and fire hazards." *Id.* § 176.402(c) (emphasis added); *see also id.* at § 176.402(b). Another section notes that inspectors must give "due consideration" "to the hazards involved in the operation permitted by a vessel's [COI]." *Id.* § 176.800(b). And it clarifies that "the standards may vary in accordance with the vessel's area of operation or any other operational restrictions or limitations." *Id.*

Because no "federal statute, regulation, or policy mandated" that Coast Guard inspectors identify and correct the plastic trash cans and chairs or any improper electrical wiring, the inspectors' alleged misfeasance was discretionary. *Schurg*, 63 F.4th at 831 (citation omitted).

### b. Public Policy Considerations

The second step of the discretionary function test "asks whether the discretionary decision challenged by the plaintiff 'is of the kind that the discretionary function exception was designed to shield.'" *Nanouk v. United States*, 974 F.3d 941, 945 (9th Cir. 2020) (quoting *Berkovitz*, 486 U.S. at 536). This inquiry "preclude[s] courts from second guessing discretionary judgments 'grounded in social, economic, and political policy.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). And as the Supreme Court emphasized in *Varig Airlines*, "whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of

the Government acting in its role as a regulator of the conduct of private individuals." 467 U.S. at 813–14.

Coast Guard inspections are textbook discretionary judgments rooted in public policy considerations. Inspectors are instructed to interpret regulations "to avoid disruption and undue expense to industry." 46 U.S.C. § 3305(d)(1). The regulations themselves even permit "departures from the specific requirements when unusual circumstances" arise, 46 C.F.R. § 175.550, and acknowledge that inspection "standards may vary in accordance with the vessel's area of operation or any other operational restrictions," *id.* § 176.800(b). By requiring inspectors to "balanc[e] considerations of safety and economics with reference to the needs and uses of the particular vessel being inspected," these judgments satisfy the public policy considerations prong of the discretionary function exception test. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 514–15 (7th Cir. 1995) (concluding the discretionary function exception covered Coast Guard inspectors' allegedly negligent omission); *see also Smith v. U.S. Coast Guard*, 220 F. Supp. 2d 275, 281 (S.D.N.Y. 2002) (noting that inspectors' "judgments implicated considerations of public policy" and were thus "shielded by the discretionary function exception").

Finally, the fact that the Coast Guard handles ten other missions—beyond just marine safety—further highlights that its judgments with respect to inspections are grounded in public policy considerations. *See Tew*, 86 F.3d at 1006 (noting that whether it would be "economically or operationally feasible" to commit Coast Guard resources to a particular mission is "a proper basis for the exercise of discretion"); *Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*, 532 F. Supp. 2d 369, 382 (D.P.R. 2008)

(balancing "the needs of society and maritime commerce" with "the expenditure of federal funds" is inherently "grounded in social and economic policy").

Accordingly, the district court correctly dismissed Plaintiffs' suit for lack of subject matter jurisdiction, as the Government's actions fell within the discretionary function exception to the SIAA's waiver of immunity.

**AFFIRMED.**[7]

---

[7] We also reject Plaintiffs' procedural challenges. The district court correctly considered the Government's argument under Rule 12(b)(1) (motion to dismiss for lack of subject matter jurisdiction) rather than Rule 56 (motion for summary judgment). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In addition, the district court did not abuse its discretion by denying Plaintiffs' request to stay proceedings, pending resolution of the criminal prosecution against the *Conception*'s captain. Discovery in the criminal prosecution related to the cause and origin of the fire, which is not essential to the discretionary function exception issue. *See Lam*, 979 F.3d at 673 ("[C]ourts should put the negligence issue aside on a [discretionary function exception]-based motion to dismiss and focus its inquiry on whether the employee's acts were discretionary.").

BUMATAY, Circuit Judge, dissenting:

Thirty-three passengers and six crew members boarded the *Conception* for a scuba trip.  The top deck of the *Conception* caught fire while they were sleeping.  The flames spiraled out of control, trapping the passengers and one crew member below deck.  In the end, thirty-four people perished.

Now, Nancy Fiedler—a mother of one of victims of the *Conception* fire—and others bring this wrongful-death action against the United States.  Their suit alleges that a chain of negligent acts led to the tragedy, including faulty safety inspections by the United States Coast Guard.  They claim the inadequate inspections led to the *Conception* operating with "open and obvious" fire hazards, contributing to the death of their family members.

The question on appeal is not about whether the United States should be held liable for the *Conception* fire, but simply whether Fiedler and the others should have their day in court.  The answer should be easy.  The Suits in Admiralty Act ("SIAA") provides that "a civil action in admiralty in personam may be brought against the United States[.]"  46 U.S.C § 30903(a).  This text settles the question.  It expressly waives the United States' sovereign immunity over admiralty cases involving its vessels and personnel.  And SIAA's text contains no other exceptions.  So nothing bars Fiedler's suit against the United States.

The majority says otherwise.  Relying on *Earles v. United States*, 935 F.2d 1028 (9th Cir. 1991), it closes the courthouse doors because the so-called "discretionary-function exception" bars SIAA's waiver of sovereign immunity.  But that's wrong.  SIAA's text contains no such

exception. And nothing indicates that Congress intended for sovereign immunity to be impliedly preserved for discretionary functions in admiralty suits. By creating a discretionary-function exception out of whole cloth, we usurp the legislative role and upset separation-of-powers principles.

And *Earles* shouldn't stand in the way of a faithful reading of SIAA. In incorporating the discretionary-function exception into SIAA, *Earles* ignored plain text and privileged a policy-based rationale. *See id* at 1032. Recently, the Supreme Court has expressly commanded that waivers of sovereign immunity must be evaluated according to their text. *See Thacker v. Tennessee Valley Auth.*, 587 U.S. 218, 223–24 (2019). And importing an atextual discretionary-function exception into waiver-of-sovereign-immunity statutes, the Court said, violates Congress's intent and undermines the separation of powers. *Id.* at 226. Given these clear directives, *Earles* has been "effectively overruled." *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020).

Because we should have interpreted SIAA according to its plain text, overruled *Earles*, and allowed this suit to proceed, I respectfully dissent.

## I.

### Sovereign Immunity & the Suits in Admiralty Act

It is bedrock that the United States is generally immune from suit. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). This rule dates to the beginning of the Republic, based on the idea that no court could exercise jurisdiction over a sovereign without its consent. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–

12 (1821) (Marshall, C.J.).  So a plaintiff suing the United States must point to a Congressional statute waiving sovereign immunity.  *Kirtz*, 601 U.S. at 48–49.  This requirement is jurisdictional, so immunity may not be assumed away to reach the merits of a claim.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

For just over half our history, claims by vessel owners against the United States—for example, those arising from a naval warship colliding with a privately owned civilian boat—were handled directly by Congress with private bills. *Canadian Aviator v. United States*, 324 U.S. 215, 218 (1945).  But American shipping picked up considerably during the First World War, including via merchant vessels owned and operated by the United States.  Note, John Grier Bartol, Jr., *Maritime Liability of the United States*, 100 U. Pa. L. Rev. 689, 691 (1952).  The result was more frequent accidents between the government's merchant fleet and private vessels.  *See* Note, Donald S. Ingraham, *The Suits in Admiralty Act and the Implied Discretionary Function*, 1982 Duke L.J. 146, 153.

So Congress enacted three statutes between 1916 and 1925 to replace the inefficient private-bill system that previously addressed such instances.  *McMellon v. United States*, 387 F.3d 329, 334–35 (4th Cir. 2004) (en banc). First, in 1916, Congress passed the Shipping Act, which subjected the government's merchant fleet "to all laws, regulations, and liabilities governing merchant vessels." Pub. L. No. 64-260, 39 Stat. 728 § 9 (current version at 46 U.S.C. § 808(b)).   But soon after, the Supreme Court interpreted the Act to allow private parties to seize government-owned merchant vessels in *in rem* actions.  *See The Lake Monroe*, 250 U.S. 246, 256 (1919); Ingraham, 1982 Duke L.J. at 154.

Congress was unsatisfied with that outcome and responded with the original version of SIAA, prohibiting these seizures.  Pub. L. No. 66-156, 41 Stat. 525, 525 § 1 (1920) (current version at 46 U.S.C § 30908); *see also* Ingraham, 1982 Duke L.J. at 154.  Instead, Congress waived the United States' sovereign immunity for *in personam* actions for damages involving government-owned or operated vessels that were "employed as a merchant vessel." *Id*. at 526–27, § 2 (current version at 46 U.S.C § 30903(a)). And a few years later, Congress passed the Public Vessels Act, extending the waiver of sovereign immunity to actions for damages involving other non-merchant ships (such as naval vessels or federal pilot boats).  Pub. L. No. 68-546, 43 Stat. 1112, 1112 § 1 (1925) (current version at 46 U.S.C. § 781).

In 1960, Congress simplified this troika of statutes by removing SIAA's limitation to only "merchant vessels." Pub. L. No. 86–770, 74 Stat. 912, 912 § 3 (1960).  The amended text (operative today) allows "a civil action in admiralty in personam . . . against the United States or a federally-owned corporation" if a case could have been maintained against a private person, vessel, or cargo.  46 U.S.C § 30903(a).  This change expanded SIAA's coverage of maritime tort claims asserted against the government. *United States v. United Cont'l Tuna Corp*., 425 U.S. 164, 176 n.14 (1976).  If a plaintiff would have had a valid action in admiralty for damages against a private party, SIAA waives sovereign immunity when the defendant is the United States.

Despite SIAA's broad language, courts have narrowed its waiver of sovereign immunity.  They've done so based on the so-called discretionary-function exception—an exception that appears nowhere in SIAA's text.  Instead, the

exception is rooted in an entirely different statute—the Federal Tort Claims Act ("FTCA").   *See* 28 U.S.C. § 2680(a).

First enacted almost 15 years before SIAA, the FTCA subjects the United States to suit for money damages for injury, death, or loss of property, "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  Pub. L. No. 79-601, 60 Stat. 812, 842 tit. IV, §§ 401–24 (1946) (codified at 28 U.S.C. §§ 1346(b), 2671–80).  The FTCA, however, *expressly* exempts from waiver any suit "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty[.]"  28 U.S.C. § 2680(a).  The purpose of the FTCA's discretionary-function exception purpose is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

Over time, every circuit to have considered the issue imported this discretionary-function exception into SIAA. *See McMellon*, 387 F.3d at 338 (compiling cases).  In doing so, they often acknowledged the lack of any discretionary-function exception in SIAA's text.  *See e.g.*, *Earles*, 935 F.2d at 1031.  But they justified creating one based on concerns over judicial "second-guessing" of executive-branch policy choices.  *See, e.g.*, *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1085 (D.C. Cir. 1980); *see also, cf. Varig Airlines*, 467 U.S. at 814.  So in nearly every circuit today, suits involving discretionary functions are barred even when such "a civil action in admiralty could [have] be[en]

maintained" against similarly situated private parties. 46 U.S.C § 30903.

And in 1991, our circuit joined the chorus. *Earles* involved a deadly speed-boat crash off Seal Beach, California. 935 F.2d at 1029–30. The district court held that the United States was comparatively negligent for failing to light a buoy that contributed to the crash, and awarded damages. *Id.* at 1030. The Ninth Circuit reversed. *Id.* Although we acknowledged that SIAA "does not expressly immunize the government for the exercise of a discretionary function," we nonetheless imported the FTCA's exception. *Id.* at 1031. We reasoned that the FTCA's discretionary-function exception was merely a "clarifying amendment," and so Congress expected that claims covered by that exception would be immunized by "judicial construction" even in its absence. *Id.* (simplified). We concluded that the lack of an express exception in SIAA's text did not mean none should exist. *Id.* We then relied on what we viewed as an unacceptable policy outcome for incorporating the exception: Without the exception, "we would subject all administrative and legislative decisions concerning the public interest in maritime matters . . . to independent judicial review[.]" *Id.* (simplified). This was sufficient for the panel to join other circuits in holding that SIAA includes a discretionary-function exception. *Id.*

## II.

### SIAA Has No Discretionary-Function Exception

Despite this current trend, SIAA is a broad waiver of sovereign immunity for admiralty cases. It contains no express discretionary-function exception. And nothing in its statutory scheme reveals any congressional intent to import

the exception.    That should've settled this question, subjecting the United States to suit here.

### A.

Begin with SIAA's text.  It starts with the title "Waiver of immunity."  46 U.S.C § 30903(a).  So we know exactly what Congress was doing in enacting SIAA: "waiv[ing] immunity."  The statutory text then contains a broad waiver of sovereign immunity:

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

*Id.*

The statute is clear—if SIAA's conditions are met, then "a civil action in admiralty in personam may be brought against the United States[.]"  *Id.*   And none of SIAA's conditions depend on whether the government acted within its discretion. *See id.*  While "Congress need not state its intent [to waive sovereign immunity] in any particular way," *Kirtz*, 601 U.S. at 48, this text could not be clearer in waiving sovereign immunity for *all* admiralty cases involving the government's vessels, cargo, or personnel when a similarly situated private party would be subject to a civil suit.  Thus, Congress expressly limited immunities only to those available to private parties and disclaimed any discretionary-function exception for SIAA suits.

This should be the end of the story.  *See Delligatti v. United States*, 604 U.S. 423, 439 (2025) (Gorsuch, J., dissenting) ("When faced with a question of statutory interpretation, the text is where we must begin (and often end).").  As the Supreme Court has recently said, our job is to read waiver-of-immunity statutes in "their usual and ordinary sense" and give their full meaning "even if inconvenient, costly, and inefficient." *Thacker*, 587 U.S. at 224 (simplified) (rejecting a discretionary-function exception for the Tennessee Valley Authority Act).  The Court cautioned that lower courts shouldn't create waiver exceptions when "[n]othing in the statute . . . expressly recognizes immunity for discretionary functions." *Id.* at 223.

Of course, we must also consider whether statutory text invokes a term of art, which may contain "implied exceptions." *Id.* at 224 (examining whether the TVA Act's "sue-and-be-sued" clause might have implied exceptions).  But unlike the sue-and-be-sued clause in *Thacker*, which had well-recognized implied exceptions, no one suggests that the precise language of SIAA—"a civil action in admiralty in personam may be brought against the United States"—has a comparable history of exceptions.  Indeed, SIAA's text is more straightforward than the TVA Act's sue-and-be-sued terminology.

Several other reasons support sticking with the plain text of SIAA.

First, the interplay between the FTCA and SIAA shows that the discretionary-function exception should not be imported from one to the other.  While the FTCA contains an express discretionary-function exception, it explicitly excludes from its scope "[a]ny claim for which a remedy is

provided by [SIAA] relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). Even more, SIAA contains an exclusive-remedy provision that would prohibit looking to FTCA remedies anyway. *See* 46 U.S.C. § 30904. That means that "Congress made a considered decision *not* to apply the FTCA to" SIAA. *See Thacker*, 587 U.S. at 225. Recognizing the discretionary-function exception in SIAA then would "negate that legislative choice" and "let the FTCA in through the back door, when Congress has locked the front one." *Id.* Indeed, if Congress wanted to import the discretionary-function exception into SIAA, Congress could have easily cross-referenced it in the FTCA or SIAA. Instead, Congress did the opposite by expressly *disclaiming* any connection. 28 U.S.C. § 2680(d); 46 U.S.C. § 30904. Simply, the FTCA and SIAA are mutually exclusive waivers of immunity and so "the FTCA's discretionary function provision has no relevance" to SIAA cases. *See id.* at 223.

Second, SIAA's enactment history—"to the extent it plays any role here"—supports such a plain-text reading. *See United States v. Miller*, 604 U.S. 518, 535 (2025). SIAA was first enacted because of the Supreme Court's 1919 holding that the Shipping Act allowed private claimants to seize government-owned merchant ships. *See The Lake Monroe*, 250 U.S. at 256. Yet Congress's response was measured—the 1920 SIAA didn't prohibit suits against the United States entirely but allowed *in personam* suits for money damages. *See* 41 Stat. 525, 525 § 1. In other words, Congress expressly limited the *remedies* plaintiffs could recover because of its concern for governmental maritime operations, yet it did not limit the United States' *exposure to suit* out of the same concern. This counts against reading the discretionary-function exception into SIAA because it

would go further than Congress's chosen path for avoiding interference with government activities. *See Thacker*, 587 U.S. at 226.

Third, "[w]he[n] Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000). Recall that Congress first enacted the FTCA with its express discretionary-function exception in 1946. *See Varig Airlines*, 467 U.S. at 809 (describing the legislative history of the FTCA). Recall too that Congress amended SIAA in 1960 to waive sovereign immunity for *in personam* suits in admiralty. *United Cont'l Tuna Corp.*, 425 U.S. at 176 n.14. Congress thus had almost fifteen years of experience with the FTCA's enumerated discretionary-function exception and didn't import it into SIAA. Because "[w]e assume that Congress is aware of existing law when it passes legislation," *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 422 (2009), it's fair to say that Congress knew how to create an exception to SIAA's waiver of sovereign immunity and declined to do so. So it would violate the separation of powers for us to judicially graft one onto SIAA. *Cf. Bostock v. Clayton Cty.*, 590 U.S. 644, 646–47 (2020) ("[W]hen Congress chooses not to include any exceptions to a broad rule, this Court applies the broad rule.").

In sum, nothing in the text, structure, or enactment history of SIAA supports a discretionary-function exception. Indeed, even the circuit courts that recognize the exception concede that they "cannot conclude that Congress clearly intended for the SIAA's waiver of sovereign immunity to be subject to an exception for discretionary functions, nor can [they] reach that conclusion by resort to traditional tools of statutory construction." *McMellon*, 387 F.3d at 340. To me, that should end the analysis.

## B.

In contrast, courts that have read a discretionary-function exception into SIAA have largely relied on misguided separation-of-powers principles. Take *Earles*. There, the panel majority reasoned,

> Were we to find the discretionary function exception not to be applicable to the SIAA, we would subject all administrative and legislative decisions concerning the public interest in maritime matters . . . to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries.

*Earles*, 935 F.2d at 1032 (simplified). In *McMellon*, the Fourth Circuit even suggested that the lack of a discretionary-function exception would be unconstitutional because it would "substantially impair[]" "the executive branch's ability to 'faithfully execute [ ]' the law." 387 F.3d at 342 (citing U.S. Const., art. II § 3). In other words, these courts decided that they needed to protect the political branches from themselves. And so, in their wisdom, they fixed SIAA to deny waiver where Congress granted it.

While I have my doubts that the Republic would crumble if the United States were subject to money damages for longstanding admiralty tort claims, this policy-based analysis turns the separation of powers on its head. The separation of powers means that we judges must stay in our lane. The Constitution unquestionably confers on Congress the task of deciding when to waive the government's immunity. As the Supreme Court has instructed us, "the

power to waive the federal government's immunity is Congress's prerogative, not ours[.]" *Kirtz*, 601 U.S. at 48. That definitionally precludes us from second-guessing Congress's choice to waive immunity. "[W]e have no business rewriting the statute to supply exceptions that Congress did not provide." *Jones v. United States*, 155 F.4th 1270, 1270–71 (11th Cir. 2025) (Pryor, C.J. respecting the denial of initial hearing en banc) (simplified) (observing that the Eleventh Circuit's precedent holding that SIAA includes a discretionary-function exception was "wrong the day [the Eleventh Circuit] decided it"). Indeed, "judges engage in activism, not 'restraint,' when they amend the statutes Congress writes." *Id.*

Instead, the separation of powers requires us to acknowledge that—when it comes to sovereign-immunity waivers—"[t]he right governmental actor (Congress) is making a decision within its bailiwick (to waive immunity) that authorizes an appropriate body (a court) to render a legal judgment." *Thacker*, at 226. While we "may question the wisdom of holding federal agencies accountable for their violations," "Congress's judgment commands our respect and the law it has adopted speaks clearly." *Kirtz*, 601 U.S. at 64. Here, Congress has clearly spoken: "a civil action in admiralty in personam may be brought against the United States" when a claim could be brought against a private person. 46 U.S.C § 30903(a). No ifs, ands, or buts.

Finally, courts importing the discretionary-function exception into SIAA conjure a parade of horribles to justify the judicial intrusion. For example, we're told that "without a discretionary function exception, the government could be held liable for an initial decision to build a dam across a particular navigable waterway or to otherwise change the course of a navigable waterway," the "government could be

held liable for the Coast Guard's drug-interdiction activities," or "the government could perhaps even be held liable for an inaccurate weather forecast." *McMellon*, 387 F.3d at 342. Whether these policy-based justifications make sense, that's for Congress to balance and weigh—not us. After all, "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (simplified).

So unquestionably SIAA has no discretionary-function exception as a matter of text or congressional intent, meaning that this suit should have gone forward.

## III.

### *Thacker* is Clearly Irreconcilable with *Earles*

One question remains—what to do with *Earles*? *Earles* incorporated the discretionary-function exception into SIAA. *Earles*, 935 F.2d at 1031. Does that mean that this panel was powerless to do anything about its contravention of SIAA's text? The answer is "no."

### A.

Ordinarily, a three-judge panel can't overrule a precedent from a previous three-judge panel. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). But our circuit's rule gives way to the Supreme Court's commands. *Id.* If a later Supreme Court decision "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," we "should consider [our]selves bound by" the Supreme Court's reasoning. *Id.* "After all, unless we wish anarchy to prevail within the federal judicial system, we are always required to follow the controlling opinions of the Court." *Langere*, 983 F.3d at 1121 (simplified).

And we are bound by the Court's "mode of analysis," not just its results. *Miller*, 335 F.3d at 900 (simplified). So we don't require "carbon cop[y]" issues; it's enough that they derive from the "same inquiry." *Langere*, 983 F.3d at 1121. "Sometimes . . . our precedent becomes effectively overruled by a Supreme Court decision that is closely on point, even if the decision does not do so expressly." *Langere*, 983 F.3d at 1121. True, mere tension with Supreme Court authority isn't enough. *See Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). But when "a rule announced by this court and a rule later announced by the Supreme Court cannot both be true at the same time . . . the former must give way to the latter." *Langere*, 983 F.3d at 1122.

Contrary to the majority's view, *Earles*'s analysis of SIAA is clearly irreconcilable with *Thacker* and so we should not have followed it. *Thacker* dealt with the TVA Act, which contained a clause allowing it to "sue and be sued in its corporate name." 587 U.S. at 220. This clause has been interpreted as a "broad" waiver of sovereign immunity and does not include an express discretionary-function exception like the FTCA's. *Id.* Despite the lack of a textual basis, however, lower courts had imported the FTCA's discretionary-function exception wholesale into the TVA Act. *Id.* A unanimous Court reversed. *Id.* at 223.

In doing so, the Court instructed how we should construe waivers of sovereign immunity. First, the Court looked at the text of the statute. The Court directed that the text be given its "usual and ordinary sense." *Id.* at 224 (simplified). And "[n]othing in the statute . . . expressly recognize[d] immunity for discretionary functions." *Id*. at 223. While the TVA Act was subject to certain exceptions, it "contain[ed none] . . . turning on whether the challenged conduct is

discretionary." *Id.* This lack of an express discretionary-function exception was all but dispositive of the question.

Second, the FTCA's express exclusion of TVA Act claims was another reason to not import the FTCA's discretionary-function exception. "Congress made clear" that the FTCA did "not apply to any claim arising from the activities of the TVA." *Id.* (simplified). "That mean[t] the FTCA's discretionary function provision ha[d] no relevance" to TVA Act claims. To hold otherwise would "let the FTCA in through the back door, when Congress has locked the front one." *Id.* at 225. To the Court, this was nearly the "end of the story." *Id.* at 224.

Third, the Court then analyzed the purported separation-of-powers concerns with denying a discretionary-function exception. Importantly, it did so o*nly* because the precise language used in the TVA Act—the "sue-and-be-sued clause"—had been interpreted in the past to contain "implied exceptions." *Id.* (quoting *Fed. Housing Admin. v. Burr*, 309 U.S. 242, 245 (1940)). Because precedent suggested sue-and-be-sued clauses uniquely might contain implied exceptions, the Court considered whether any such exception was "necessary to avoid grave interference with the performance of a governmental function." *Id.* (quoting *Burr*, 309 U.S. at 245). In any event, the Court easily dismissed those concerns. The Court flatly stated that Congress's decision to waive immunity—even for the government's discretionary functions—does not "offend the separation of powers." *Id.* at 226. It is simply enough that "[t]he right governmental actor (Congress) is making a decision within its bailiwick (to waive immunity) that authorizes an appropriate body (a court) to render a legal judgment." *Id.*

Finally, the Court thought it an "overreach[]" to suggest that allowing suits based on the government's discretionary conduct would "gravely interfere with governmental functions." *Id.* (simplified). While recognizing that some governmental activity might justify retaining some immunity, the Court still rejected "the wholesale incorporation of the discretionary function exception." *Id.* at 227. Instead, "a far more refined analysis" was required. *Id.* Even when governmental activity is involved, something like a discretionary-function exception "might" be invoked "only" when it is "clearly shown" that it is "necessary to avoid grave interference with a governmental function's performance." *Id.* at 228 (simplified). It then remanded to the lower courts to figure out when this "high bar" is met. *Id.*

**B.**

The unmistakable import of *Thacker* is that the text and structure of the law governs whether an exception to the waiver of sovereign immunity exists. *See also Miller*, 604 U.S. at 529 (examining "text and structure" to decide whether sovereign-immunity was waived). And only when "implied exceptions" to that text have been recognized do we even consider whether "grave interference" with a government function would require any exception to the waiver. *Thacker*, 587 U.S. at 223. And even then, "the wholesale incorporation of the discretionary function exception" is never appropriate. *Id.* at 227. *Earles* failed to follow any of this analysis, making it and *Thacker* "clearly irreconcilable." *Miller*, 335 F.3d at 900.

First, *Earles* purposefully disregarded SIAA's plain text. *See Earles*, 935 F.2d at 1031. It conceded that "the SIAA does not expressly immunize the government for the

exercise of a discretionary function." *Id.* But unlike in *Thacker*, a lack of text was no obstacle; *Earles* merely proclaimed that "the omission of the Exception from the SIAA does not necessarily mean that the SIAA is not subject to it." *Id.* So the text wasn't that important to *Earles*. While the majority downplays this incompatibility with *Thacker*, it can't ignore that plain-text analysis was central to the Court's reasoning in that case.

Second, rather than recognizing the FTCA's express inapplicability to SIAA claims, *Earles* imported wholesale the FTCA's *textual* discretionary-function exception into SIAA. Unlike *Thacker*, *Earles* ignored that the FTCA expressly excluded claims under SIAA from its scope. *See* 28 U.S.C. § 2680(d). Instead, *Earles* coupled the two statutes together and ruled that "the Discretionary Function Exception applies to SIAA as well as to the FTCA." 935 F.2d at 1032. But this smuggles the FTCA into SIAA against Congress's express wishes and the Court's instruction in *Thacker*. *See Thacker*, 587 U.S. at 225 (warning against "let[ting] the FTCA in through the back door, when Congress has locked the front one").

Third, *Earles* shouldn't have even considered separation-of-powers concerns. Again, *Thacker* only analyzed that issue because the "sue-and-be-sued clause" has been historically recognized to contain "implied exceptions." *Id.* at 224. We have no such language or terms of art here. While the majority says *Thacker* is based on the TVA Act's "sue-and-be-sued" language, the Court's textual reasoning applies with even greater force here because no one argues that SIAA's straightforward language contains similar established implied exceptions. Indeed, SIAA could not be clearer: if its conditions are met, then "a civil action in admiralty in personam may be brought against the United

States."   46 U.S.C. § 30903(a).   And so the majority is
simply wrong to cast SIAA's waiver as "more conditional"
than the TVA Act's term-of-art phrase.   So based on
*Thacker*'s reasoning, *Earles* should be overruled just by
looking at SIAA's text.

Fourth, even if we should consider separation-of-powers
concerns, *Earles* got them exactly wrong.   *Earles* believed
denying an exception would "subject all administrative and
legislative decisions concerning the public interest in
maritime matters . . . to independent judicial review[.]"   935
F.2d at 1031 (simplified).   But this was precisely *opposite* to
what the Supreme Court said in *Thacker*: as long as the
"right    governmental    actor    (Congress)"    decides    to
"authorize[] an appropriate body (a court) to render a legal
judgment," then there are no "separation of powers
problems."   *Id.* at 226.

Finally, even if the discretionary-function exception has
any relevance in SIAA suits, *Earles*'s wholesale importation
of the FTCA exception violates *Thacker*'s teachings.   Once
again, *Thacker* emphasized that recognizing any exception
to the waiver of immunity required "a far more refined
analysis" than "wholesale incorporation" of the exception.
*Id.* at 227.   Any implied exception would apply only to a
narrow category of government conduct: when the
government "clearly show[s]" that it is "necessary to avoid
grave interference with a governmental function's
performance."   *Id.* at 228 (simplified).   Rather than clearing
this "high bar," *id.*, *Earles* granted the government immunity
in *all* admiralty cases involving *any* government discretion,
*Earles*, 935 F.2d at 1032.

In sum, the "mode of analysis" that *Earles* employed was
expressly rejected by *Thacker* in deciding a "closely on

point" question of law. *Langere*, 983 F.3d at 1121. Thus, *Thacker* "effectively overruled" *Earles* and this panel was not bound to follow it. *Id.*

## IV.

The Supreme Court has told us that when it comes to sovereign immunity, text is supreme and Congress's will trumps our own. We should have listened to the Court's instructions and recognized that *Earles* has been effectively overruled.

I respectfully dissent.